## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

MARILYN DELAHOY, on behalf of
herself and all others similarly situated,

        Plaintiff,

   v.

SAMSUNG ELECTRONICS
AMERICA, INC. and SAMSUNG
ELECTRONICS CO., LTD.,

        Defendants.

**JURY TRIAL DEMANDED**

**CLASS ACTION**

## CLASS ACTION COMPLAINT

Plaintiff Marilyn Delahoy, individually and on behalf of all others similarly situated (the "Class"), through her undersigned counsel, alleges as follows against Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (together "Samsung").

### INTRODUCTION

1.    Plaintiff and the Class are purchasers of Samsung electric ranges (the "Ranges") that include dangerous latent defects in the design of their front-mounted burner control knobs that make the Ranges susceptible to unintentional activation (the "Defect"). The control knobs on the Ranges are prone to, and do, rotate as a result of minor, inadvertent contact. When the knobs on the Ranges are accidentally and inadvertently contacted, the burners heat their electric cooktops without warning to the

1

consumer.  This unintentional activation of the Ranges' cooktops in turn creates a hazardous condition and serious risk of fire, property damage, and personal injury.

2.     The Ranges span several model numbers, but they all contain the same defect and are all subject to unintentional activation.

3.     The defective condition of the Ranges is the result of the low detent (catch that prevents motion until released) force and tiny distance the burner control knobs need to travel to be turned to the "on" position, which is inadequate to prevent unintentional activation.  In other words, the ease with which the knobs can be pushed in and rotated without resistance fails to prevent the cooktop from being turned on inadvertently.

4.     Further, the control knobs are placed on the Ranges without the necessary guards to prevent such unintentional activation.

5.     The propensity of the Ranges to be unintentionally activated—*i.e.*, turned on by accident—creates a significant and largely unappreciated safety risk for Plaintiff and the Class.  The Defect renders the Ranges hazardous and unsafe for normal and expected use.  The Defect substantially impedes the central function of the Ranges, which serve one purpose: safe cooking.

6.     Since at least 2014, Samsung has known that its electric Ranges were susceptible to unintentional activation.  Consumers have filed numerous incident reports about the Defect with the U.S. Consumer Product Safety Commission (the

"CPSC").  Consumers have also filed complaints with Samsung directly via product reviews and online community forums.

7.      In addition, Samsung has expressly admitted that the Ranges contain a defective and dangerous condition, as it maintains a page on its website titled "Range knobs accidentally turn on cooktop too easily," the existence of which further confirms the company's knowledge of the Defect.

8.      Despite this admission—and rather than curing the Defect—Samsung has instead elected to conceal it from Plaintiff and the Class by including misleading information in the above-described web page.  On that page, Samsung falsely claims that, despite the unintentional activation and fire hazard they present, the Range knobs must be designed the way they are to comply with international standards.

9.      Samsung also advises consumers that they can purchase after-market third-party cooktop knob covers or locks to circumvent the inherently defective design of the knobs—again, instead of curing the Defect.

10.      More recently, Samsung has updated the above web page to inform Range owners that they can purchase replacement knobs from Samsung to guard against the Defect at an additional cost to the consumer—brazenly seeking to profit from a serious safety hazard that Samsung itself created.

11.    Because of Samsung's false and misleading statements, and the company's concealment of the Defect, Plaintiff and the Class were deceived and

deprived of the benefit of their bargain. A range that turns on without a consumer's knowledge has no value because it cannot be used safely. Alternatively, the Ranges have far less value than promised at the point of sale, because a range prone to unintentional activation, and the attendant risk of harm, is less valuable than one that operates safely.

12. The below allegations are based upon personal knowledge as to Plaintiff's conduct and are made on information and belief as to the acts of others.

**JURISDICTION AND VENUE**

13. This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the Class is a citizen of a state different from that of Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the Class consists of more than 100 class members, and (d) none of the exceptions under 28 U.S.C. § 1332(d) apply to this action.

14. The United States District Court for the District of New Jersey has jurisdiction over Defendants because they reside and transact business in New Jersey, have purposely availed themselves of the laws of New Jersey, and because many of the specific events giving rise to this action occurred in New Jersey.

15. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in

this District. Defendants have marketed, advertised, and sold the Ranges, and otherwise conducted extensive business, within this District. In addition, both Defendants' principal place of business is in Ridgefield Park, New Jersey.

## PARTIES

16.   Plaintiff Marilyn Delahoy is a citizen and resident of Niagara Falls, New York.

17.   Defendant Samsung Electronics Co., Ltd. ("SECL") is a South Korean multinational corporation located in Seoul, South Korea. SECL designs, manufactures, and distributes Ranges for sale in this jurisdiction. According to samsung.com, SECL's "North America Headquarters" is in Ridgefield Park, New Jersey. SECL also regularly monitors its wholly owned subsidiaries' financial risk arising from operating activities and regularly dispatches financial risk managers to its regional headquarters in the United States.

18.   SECL is and has at all times relevant been in the business of manufacturing, distributing, marketing, promoting, and selling the Ranges throughout the United States and in this jurisdiction. SECL purposely directs its conduct toward this District and engages in a continuous course of business in this District, both by intentionally locating its wholly owned subsidiary in this District and by selling thousands of ranges and other consumer goods in this District every year.

19.     Defendant Samsung Electronics America, Inc. ("SEA") is a wholly owned subsidiary of SECL. SEA is a New York corporation with its headquarters in Ridgefield Park, New Jersey. SEA warranties products designed, manufactured, and distributed by SECL, and it acts as SECL's agent in the processing of warranty claims related to defects in manufacturing or materials used by SECL during the manufacturing process.

20.     SEA is and has at all relevant times been in the business of distributing, marketing, promoting, and selling the Ranges described herein throughout the United States and in this jurisdiction. SEA resides in and engages in a continuous course of business in this District and sells thousands of ranges and other consumer goods in this District every year.

21.     SECL and SEA (collectively, "Defendants" and/or "Samsung") are in the business of manufacturing, producing, distributing, and selling consumer appliances, including Ranges, to customers throughout the United States, both directly and through its network of authorized dealers.

**ALLEGATIONS SPECIFIC TO PLAINTIFF DELAHOY**

22.     In or around October 2019, Ms. Delahoy purchased a new Samsung Range Model Number NE58F9710WS/AA from Orville's—an authorized Samsung reseller—in Amherst, New York for a total of $1,266.94, including accessories, delivery, and taxes.  The Range itself cost $1,096.

6

23.     Ms. Delahoy reviewed Samsung marketing materials, including in-store promotional materials and online advertisements, before she purchased her Range.  She was persuaded to purchase the Range because Samsung's placement of the knob controls on the Range's front, rather than above its cooktop, appeared to make it safer. Indeed, front-mounted knobs allowed Ms. Delahoy to control the cooktop's temperature without having to reach across the Range.

24.     Ms. Delahoy was aware that her Range was covered by a Samsung warranty. The warranty was included in the user manual that came with her Range. The warranty provides that Samsung warrants against manufacturing defects in materials and workmanship for one year.  Absent this warranty, Ms. Delahoy would not have purchased her Range.

25.     Ms. Delahoy purchased the Range for personal, family, or household use.

26.     Ms. Delahoy uses, and at all times has used, her Range in a normal and expected manner.

27.     Ms. Delahoy began noticing that her Range was being turned on inadvertently in the spring of 2021, when contractors working in her kitchen unintentionally activated it on two separate occasions.

28.     In early 2022, Ms. Delahoy inadvertently activated the Range herself while she was cooking.  The cooktop heated while Ms. Delahoy had bacon grease cooling on what she thought was an inactive back burner.  She did not realize the back

7

burner of the Range had been activated until she heard bacon grease cracking and saw it splattering all over her kitchen. In handling this emergency, however, Ms. Delahoy burned her arm, which lead to a blister than has now become a scar:



29.     Just weeks after, Ms. Delahoy's Range was unintentionally activated by a guest attempting to serve themself a slice of pizza. Ms. Delahoy and her guests soon began to smell smoke in her nearby living room. Ms. Delahoy quickly returned to the kitchen, where she found that the pizza box had caught fire from her Range's burner. Ms. Delahoy disposed of the burning box in the snow outside her house.

30.     Shortly thereafter, Ms. Delahoy contacted Samsung about her Range and the Defect.

31.     At that time, a Samsung representative told her that it was interested in her claim and, also, that the company would send out a technician to repair her Range.

32.     While visiting the Delahoy home on or about March 1, 2022, the Samsung technician told her that the burner controls were compliant with Samsung's intended design—but also agreed that they were dangerous.  The technician promised to escalate Ms. Delahoy's concerns to Samsung's Research & Development Division.  He also further suggested that Ms. Delahoy purchase knob covers for her burner controls and advised that Samsung might be able to send her a set of such covers.

33.     Ms. Delahoy told the Samsung technician that this Range should be recalled because its poor design would eventually cause a fire leading to someone's death.

34.     Despite Ms. Delahoy's input, and the Samsung technician's assurances that he would escalate the issue and provide knob covers, she still has not received any fix to the Defect.

35.     Rather, Ms. Delahoy received only an email from Samsung's Specialty Claims department informing her that the technician was unable to find manufacturing defects in her Range and that Samsung was not able to proceed with any additional accommodations.

36.     In early June 2022, Ms. Delahoy was using a 7-gallon stock pot on her Range to simmer (using the "low" setting) 60 meatballs, 2 racks of spare ribs, 8 chicken thighs, and Italian sausage in a large volume of homemade spaghetti sauce.

37.    Following the scent, Ms. Delahoy's dog attempted to hoist itself up on the Range to see what was cooking; in doing so, the dog hit the burner knob onto "high."

38.    Plaintiff Delahoy noticed the change too late, so everything in the pot ended up burning and the pot itself was badly scorched.  Had Plaintiff Delahoy not noticed that the burner was on high until later, it possibly could have started a fire.

39.    Before purchasing her Range, Ms. Delahoy did not and could not have known that her Range suffered from the Defect.  Had Samsung disclosed the Defect prior to her purchase of the Range on the product's packaging, in promotional and marketing materials, in the accompanying print materials, or through some other means, Ms. Delahoy would not have purchased the Range or would have paid substantially less.  As a direct result of Samsung's conduct, Ms. Delahoy has suffered significant economic injury.

**FACTUAL ALLEGATIONS COMMON TO THE CLASS**

**A.    The Ranges**

40.    The Ranges each have front-mounted knobs that control the cooktop's burners, for example:[1]

_____

[1] https://www.samsung.com/us/home-appliances/ranges/electric/ne58f9710ws-slide-in-electric-range-with-flex-duo-oven-ne58f9710ws-aa/        (Model        Number NE58F9710WS/AA, which is the model owned by Plaintiff Delahoy).



41.     The  models  at-issue  include,  but  are  not  limited  to:  NE58F9500SS,
NE58F9500SS/AA,      NE58F9710WS,      NE58F9710WS/AA,      NE58H9950WS,
NE58H9950WS/AA,      NE58K9430SS,      NE58K9430SS/AA,      NE58R9311SS,
NE58R9311SS/AA,  NE63T8511SS,  and  NE63T8511SS/AA  and  all  models
containing substantially similar controls.

42.     The National Home Builders Association states that the useful life of an
electric range is 13 to 20 years, with 16 years being the average.[2]

**B.     The Defect**

43.     Consumers reasonably expect that Range burners can only be activated
by  intentional  and  deliberate  action.  Stated  another  way,  consumers  would  not

---

[2] https://www.mrappliance.com/expert-tips/appliance-life-guide/.

anticipate that inadvertent contact with the Ranges' burner controls—while cooking or performing other activities in its proximity, or by pets or children—will activate the Range burners. However, because of the Defect, inadvertent contact with the burner controls may, and has, resulted in unintended activation of the Range burners. Indeed, inadvertent contact with burner controls by pets and children has caused burners to activate and create fires.[3]

44.     Unfortunately, and unbeknownst to consumers, because of the Defect, each knob on the Ranges activates a corresponding burner through a single smooth motion—a push motion with a twist—requiring minimal force and distance. This design is susceptible to unintentional activation rendering the Ranges dangerously defective.

45.     The process to activate a burner should and is intended to be the result of two separate and distinct purposeful actions: a first action (pushing the control knob in), followed by a second action (rotating the knob to the desired heating level).

46.     The user manual for the model Range purchased by Ms. Delahoy, for instance, describes the activation process as such:

---

[3] https://www.youtube.com/watch?v=K2GFZoAW-a0.

**HOW TO SET THE APPLIANCE FOR SURFACE COOKING**

 • The surface elements may be hot even when off and burns can occur. Do not touch the surface elements until they have cooled down sufficiently.

• At high or medium-high settings, never leave food unattended. Boilovers cause smoking and greasy spillovers may catch on fire.

• Be sure you turn the control knob to **OFF** when you finish cooking.

**Single surface unit control knob (left rear, right rear)**

1. Push the knob in.
2. Turn in either direction to the setting you want.
   • At both the off and high settings, the knob clicks into position.



**Bridge surface unit control knob (left front)**

1. Push the knob in.
2. Turn in either direction to the setting you want.
   • To use the single surface unit, turn the control knob to the single burner setting.
   • To use the bridge surface unit, turn the control knob to the bridge burner setting.



**Triple surface unit control knob (right front)**

The triple surface unit has 3 cooking sizes to select from so you can match the size of the cooking area to the size of the cookware you are using.

1. Push the knob in.
2. Turn in either direction to the setting you want.
   • To use the large surface unit, turn the control knob to the **large burner (A)** settings.
   • To use the middle surface unit, turn the control knob to the **middle burner (B)** settings.
   • To use the small surface unit, turn the control knob to the **small burner (C)** settings.



 If you removed knob for cleaning, insert it after check to direction. (refer to above figure)

47.    However, because of the low detent force and miniscule distance the control knobs need to travel to allow users to turn on their cooktops, the burners are often inadvertently activated by a single continuous motion.

48.    All of the Ranges are also uniformly defective because they all fail to appropriately guard against unintentional activation.  The design of the Ranges puts no space between the consumer and the hazard.  There are no guards that reduce the risk

13

of unintentional activation during cleaning or other inadvertent contact made by a user, bystander, child, or pet.

49.     While some of the Ranges may contain an oven handle that could have a guarding effect, its design is wholly insufficient to act as an effective guard or barrier. As an initial matter, the outermost burner control knobs in each of the Ranges protrude further than the oven handles themselves—therefore eliminating any guarding property they may have. Moreover, any such guarding effect is further blunted by the oven handles' rounded (rather than squared) design, which permits inadvertent contact.

50.     The Defect renders Samsung Ranges unusable for their intended central purpose: safe cooking.  Unintentional activation of the Range burners allows them to reach extreme temperatures, creating a fire danger.

51.     The Ranges are defective at the point of sale. Consumers could not reasonably know about the defect at the point of sale and could not discover the defect with a reasonable investigation at the time of purchase or delivery because a reasonable inspection by a consumer would not reveal whether the materials of the Ranges, the design of the Ranges, and/or the manufacturing processes related to the Ranges render them unsafe for normal and expected use.

C.      **Samsung's Knowledge of the Defect**

52.     At all relevant times, Samsung knew that the Ranges it marketed and sold were prone to unintentional activation, and, therefore, that the Ranges were inherently defective, unmerchantable, and unfit for their intended use.

53.     Consumers submitted incident reports about the Defect to the U.S. Consumer Product Safety Commission ("CPSC")") as early as 2014.  The following is a sample of those complaints, which demonstrate that Samsung knew about the Defect by at least 2014. The CPSC transmitted all these complaints to Defendants.

54.     Report sent to Samsung on June 11, 2014:[4]

---

**Incident Details**

**Incident Description:** I purhased a Model# NE58F9500SS 5.8 cu ft. slide in electric range made by Samsung from The Home Depot in January 2014. It has a glass top. On several occasions either my husband or I have accidentally turned on a burner when leaning against the oven. Luckily, we have not had anything on top of the burner when it was started. However, I am fearful that this could happen and result in a fire. This oven was a replacement for another glass top oven which we had for almost 20 years. It is normal for us to set the mail and/or items on the stove top when it is not in use. I am reporting this today because my husband accidentally turned on a burner again.

**Incident Date:** 6/3/2014

**Incident Location:** Home/Apartment/Condominium

---

55.     Report sent to Samsung on April 1, 2015:[5]

---

[4] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1406450

[5] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1474926

**Incident Details**

**Incident Description:** On January 9, 2015, I bought a Samsung Electric Range, Model # NE58F9710WS, Serial # J1927DCFA00500T from Best Buy, Norwalk, CT. Unfortunately, this product appears to be very dangerous. I would give this range an good/excellent rating if I wasn't having such a problem with the stovetop controls. Almost every time I am cooking or using the microwave which is installed above the stove, I accidentally turn on a burner by leaning into one of the knobs on the front of the range. On many occasions, I have turned around to smell or feel the heat of the burner, which I unknowingly turned on. I am 5' 5" tall and when using the microwave above the stove, the same thing happens, I've accidentally pressed into a control know and a stovetop burner is accidentally turned on. Also, when wiping the front panel or cleaning the stove, it is easy to turn on the warming drawer at the bottom of the stove. Again, very dangerous. I have almost caused a fire on 2 occasions with this range. I look forward to your reply and a resolution to my problem. I have also emailed Samsung about this problem. Please contact me at the above email address or my cell phone [REDACTED]. Sincerely, [REDACTED]

**Incident Date:** 3/23/2015

**Incident Location:** Home/Apartment/Condominium

56.     Report sent to Samsung on March 16, 2017:[6]

**Incident Details**

**Incident Description:** !The new Samsung electric stove that we bought in September and installed with the new kitchen in November has a design flaw- the knobs are too sensitive and turn if bumped into or leaned against. It happened on 3 occasions and we were unaware that the burners were activated, so we had 3 fires already, 2 fires damaged the glass cooktop, and third fire damaged the oven door, and also burned the pots and pans that I was storing in the oven. Samsung sent a technician who suggested that I remove the knobs when the stove is not in use. I explained to him that this stove is a fire hazard, that my husband who is 78 years old and cannot walk steadily can easily bump into the knob again, but technician sent a report to Samsung stating that there is nothing wrong with the stove and that I simply complain that the knobs are too sensitive. I checked the online forums and found that several people also complain about this issue. Samsung refuses to acknowledge the flaw, stating that the fires were caused accidentally by me and therefore the warranty does not apply. I begged them to listen to me, but they said that the only way for me to receive a refund is for the technician to say that it is not repairable. The technician that came today said that he cannot do anything about the knobs, that this is a design flaw, but as far as his position allows him the most he can do is to try and replace the cooktop and oven door if Samsung approves this repair. I am afraid to live with fire hazard, and want this stove out of my house. I had an [REDACTED] stove for 10 years, the same type as Samsung and never had any issues with it.

**Incident Date:** 12/24/2016

**Incident Location:** Home/Apartment/Condominium

57.     Report sent to Samsung on August 28, 2017:[7]

**Incident Details**

**Incident Description:** My Samsung slide in range model NE58H9950WS has sensitive electronic controls and it sometimes is accidentally turned on if touched when I lean/reach over it. I was cleaning my countertop around the range when a warming function was accidentally turned on. I heard a very loud and long buzzing sound which I discovered was coming from the range. Smoke was coming from around the range and counter. I tried to turn off the oven warming but was not able to do so. I ran to my electrical breaker box and turned off electricity to stop feeding power to what was clearly an electrical fire. (I was not cooking food or cleaning my oven at the time.) I contacted Samsung because I believe the range is unsafe/defective. They said my 3yr 1mo old range is out of warranty and they have no interest in investigating the electrical safety issue.

**Incident Date:** 7/14/2017

**Incident Location:** Home/Apartment/Condominium

58.     Report sent to Samsung on July 27, 2020:[8]

---

[6] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1644104

[7] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1688225

[8] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1996420

16

**Incident Details**

**Incident Description:** The control knobs on this stove stick out to a point that are very easy to come into contact with. A sight brush against the knob causes it to turn on. The closest heat level to the Off position is the hottest. Since purchasing it in March 2019 we have had numerous accidental turn-ons. It was purchased at the Kahului, HI Costco store. I read several owner comments who complained about the controls. But the rating was very high. I have reported this problem to Costco, I sent a complaint to Samsung appliance division and I checked their factory parts department to see if they had recessed knobs to fit my stove; they did not. My personal feeling is the knobs are designer overkill. They look nice but are impractical and unsafe. The reason I am sending this complaint is that tonight was the last straw. While preparing the evening meal one knob was brushed and burned part of the meal on the stove. I'm very surprised that children don't cause the burners to turn on. My email is [REDACTED] Thank you [REDACTED]

**Incident Date:** 7/16/2020

**Incident Location:** Home/Apartment/Condominium

59.    Report sent to Samsung on March 24, 2021:[9]

**Incident Details**

**Incident Description:** I purchased a Samsung front control electric range (NE63T8511SS) on 11/20/2020 and took delivery on 12/26/2020. The range controls on the front are easily activated while brushing against them to place items in the the microwave or cabinets above the range. Though we've caught the burners turning on multiple times, it has twice resulted in kitchen fires and once resulted in a minor burn to my hand.

**Incident Date:** 3/13/2021

**Incident Location:** Home/Apartment/Condominium

60.    Consumers have also submitted complaints about the Defect directly to Samsung via reviews posted to its website.  A sampling of those complaints is below.[10]

---

[9] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3114393

[10] https://www.samsung.com/us/home-appliances/ranges/electric/ne58f9500ss-slide-in-electric-range-ne58f9500ss-aa/; https://www.samsung.com/us/home-appliances/ranges/electric/ne58f9710ws-slide-in-electric-range-with-flex-duo-oven-ne58f9710ws-aa/; https://www.samsung.com/us/home-appliances/ranges/electric/ne58k9430ss-5-8-cu-ft-slide-in-electric-range-ne58k9430ss-aa/; https://www.samsung.com/us/home-appliances/ranges/electric/6-3-cu-ft-front-control-slide-in-electric-range-with-air-fry-in-stainless-steel-ne63t8511ss-aa/.



Nancy · 2 years ago

**Totally dissatisfied**

based on this experience i will never purchase another samsung appliance again. the knobs are easily knocked "on" which happened and caused a pot to burn and crack the cooktop. thankfully it did not burn down my house and now i have to keep the knobs completely off the range unless i am cooking. highly inefficient and unattractive. but worse is the customer service - total lack of it. they could not find a vendor to service the repair in my area and i had to take care of it myself with the "promise" of reimbursement. this happened back in feb 2020. it's now nov 2020...still no reimbursement.



Yellow4son · 2 years ago

**Almost burnt my house down**

the stove looks beautiful so i was excited when i moved into my new house and this stove was here. but that quickly changed, the knobs are in the worst place and turn on so easily. if we reach above to start our microwave and barely touch the knob it turns on. they made a lock for the oven but there should be a lock for the knobs. twice now we have almost burnt house down. dont waste your time buying this. it is a hazard waiting to happen.



MAZLAZ · 7 years ago

**Stove top turns on easily and beware for safety reasons**

The knobs on the range turn on so easily it is a safety risk. Twice I had things smoking on the range when the range was thought to be off. If you just bump against it. Others has this problem too wish I checked it out before I bought. Also fast boil took 30 minutes to start to boil - -way too slow.

18

★★★☆☆

UncleScotty · 2 years ago

### Burner Control Heads up

knobs can be accidentally turned on too easily.

be very cautious working around the front of the range.

★☆☆☆☆

Suzy · 7 months ago

### Easy to turn on knobs

I am obviously not a quick study as I have accidentally turned the burners on by accident three times. The first two times I caught the mistake quickly. The last time resulted in a kitchen fire. They are extremely touchy and I would not recommend. Especially if you have kids, dogs or slow learning adults (lol).

★☆☆☆☆

Heidi · a year ago

### DANGEROUS!!!

first lowes really disappointed me when we finally got to use the airfryer the the house filled up with smoke, we were 2 days past 30. they said tough luck! $1699 for a range that has a useless airfryer! plus the super dangerous design flaw with front knobs they turn so easily n the next thing you're either burning or under-cooking your food so now i have to be hyper vigilant to constantly check if the knobs accidentally turned i hate this range so much plus if you bring something to boil and turn the range down to 2 to simmer, it will stay boiling! i'm 53 yrs old this is the worst range, i have ruined so many dinners cooking with this expensive junk to spend the money we did and be stuck with this dangerous unit is so heartbreaking! do not buy this range!!!



★★★☆☆

Kathryn · a year ago

**Not completely child safe**

Previous reviews raved about the child safe features of this stove. It is not child safe! The lock button only locks the control panel and door but is right in the front and easy to unlock for anyone over 3. It also does not lock the knobs at all, and they are super sensitive and can turn on with a bump, tap, or seemingly if you look at them hard enough. Cool features, but not worth the additional price we paid for the safety features we thought we were getting. All of our reasonably expected research seemed to confirm the salesperson's statement of child safety. We feel lied to.

61.     Other consumers have taken to the Samsung Community forum to voice their frustration with the Defect:[11]



62.     In addition, as explained above, certified Samsung appliance technicians have observed unintentional activation in Ranges in the field.  In fact, the technician

---

[11]          https://us.community.samsung.com/t5/Kitchen-and-Family-Hub/Knobs-on-Range-move-too-Easily-Fire/td-p/2174929

that Samsung sent to repair Plaintiff Delahoy's Range acknowledged that the Ranges were dangerous for this very reason.

63.    Lastly, Samsung maintains a page on its website titled "Range knobs accidentally turn on cooktop too easily."[12]   Samsung's inclusion of a web page specifically addressing the problems Plaintiff and the Class experienced further confirms that these problems have been known to Samsung.

**D.    Samsung Not Only Failed to Disclose the Defect, Samsung Affirmatively Concealed It**

64.    Despite knowledge of the Defect, Samsung has nevertheless repeatedly dismissed and denied the Defect.

65.    A prior iteration of the above page on Samsung's website—"Range knobs accidentally turn on cooktop too easily"—stated that:

> Although our ranges and some of our cooktops come with a Child Lock feature, this will not prevent the knobs from turning on the cooktop. This can be particularly dangerous with gas cooktops. Although all knobs must be made this way to meet international standards, third party products are available to address this issue.

66.     Recently, Samsung updated this webpage to elaborate upon its claims that, despite the unintentional activation experienced by Range users, the knobs were

---

[12]    https://www.samsung.com/us/support/troubleshooting/TSG01203557/

not defectively designed—rather, they are designed as they are for the purported purpose of complying with international standards:[13]

> The knobs on Samsung ranges are designed to meet the requirements set by international standards, which requires a two-factor mechanism. This means two movements are simultaneously required to turn on an element: pushing in and turning. The knob will not turn unless force is being applied to push it inwards. All ranges with knobs must meet this standard and Samsung is no exception.[14]

67.     However, as explained above, the knobs activate Range burners through a single smooth motion requiring little force and distance to permit rotation release. Indeed, cooktops can be turned on with one continuous motion.  This is not required by international standards.

68.     Knowing this, Samsung hedges against its attestations of compliance with industry standards by advising consumers to take matters into their own hands and purchase third-party cooktop knob covers or locks to remedy the Defect:

> However, there is something you can do. Getting some cooktop knob covers [https://www.amazon.com/s?k=cooktop+knob+covers]  or locks can protect your knobs from accidentally being brushed against. Some even offer child-proofing. This is the option we recommend for those who are concerned that their cooktop may be too easy to accidentally turn on. If at any point you need to replace the knobs, visit samsungparts.com to purchase replacements.[15]

---

[13]   *Id.*

[14]   *Id.*

[15]   *Id.*

69.     In addition, Samsung also states that owners of the Ranges can purchase replacement knobs from Samsung:

> If at any point you need to replace the knobs, visit samsungparts.com [https://www.samsungparts.com/PartsList.aspx?Catalog=Parts_and_Accessories&SearchKey=knob] to purchase replacements.[16]

70.     The Samsung web page described above is an express acknowledgement and admission that Range burners can be inadvertently activated by normal and expected use of the Range, that the Ranges are unsafe at time of sale to consumers, and that remedial post-sale remedies are necessary to make the Ranges safe, or at least safer, for their intended and expected use.

71.     Samsung not only knows about the Defect, and has known about it for some time, it has taken affirmative steps to conceal the Defect from Plaintiff and the Class—and to profit from it.

**E.     Samsung's Deficient Warranty Service**

72.     Samsung provided a uniform, express one-year factory warranty against manufacturing defects in materials and workmanship.  Such a warranty was included in the user manual for the model Range purchased by Ms. Delahoy:

---

[16]    *Id.*

23

PLEASE DO NOT DISCARD. THIS PAGE REPLACES THE WARRANTY PAGE IN THE USE & CARE GUIDE

**SAMSUNG ELECTRIC RANGE**

**LIMITED WARRANTY TO ORIGINAL PURCHASER WITH PROOF OF PURCHASE**

This SAMSUNG brand product, as supplied and distributed by SAMSUNG ELECTRONICS AMERICA, INC. (SAMSUNG) and delivered new, in the original carton to the original consumer purchaser, is warranted by SAMSUNG against manufacturing defects in materials or workmanship for the limited warranty period, starting from the date of original purchase, of:

**One (1) Year Parts and Labor**
**Five (5) Years Glass Cooktop Part and Radiant Heater Part (Parts Only)**
During this limited additional four-years warranty, you will responsible for any labor or in-home service.

73.    Upon information and belief, Samsung routinely denies warranty claims arising from the Defect.

74.    In addition to the express warranty, Samsung marketed, advertised, and warranted that the Ranges were of merchantable quality and fit for their intended purpose. Samsung also marketed, advertised, and warranted that the Ranges were free from defects and did not pose an unreasonable risk to persons or property. However, a range that can be activated unintentionally is not fit for its intended purposes and would not pass without objection in the trade.

75.    Federal law mandates that any manufacturer or seller offering a product to customers, whether directly or indirectly, cannot disclaim implied warranties of merchantability and fitness for a particular purpose where that manufacturer has made an express warranty.

76.    Samsung has not implemented an effective remedy for consumers who are at risk because of the Defect.  And despite being made aware of the Defect, Samsung has failed to provide effective repairs.

**F.**      **Injuries and Risk of Imminent Harm to Plaintiff and the Class**

77.      Plaintiff and the other Class purchased their Ranges solely for their personal, residential purposes and only used the Ranges as intended and in accordance with the operating instructions provided by Samsung.

78.      In light of the Defect, Plaintiff and other Class Members paid far more than the reasonable value of the Range, and would have paid substantially less, or not have purchased a Range at all, had Samsung adequately disclosed the Defect.

79.      Samsung has profited and continues to profit from the sale of defective Ranges by failing to disclose the above-described Defect and continuing to sell Ranges at prices well above their reasonable value.

80.      As a direct and proximate result of Samsung's false warranties, misrepresentations, and failure to disclose the Defect in these Ranges, Plaintiff and the Class have purchased the Ranges and have suffered injury as a result.

81.      As a direct and proximate result of Samsung's concealment of the Defect, its failure to warn its customers of the Defect and the safety risks posed by the Ranges, and its failure to remove the defective Ranges from consumers' homes or otherwise remedy the Defect, Plaintiff and the Class purchased Samsung's defective and unsafe Ranges and, in many cases, use them in their homes to this day. Had Plaintiff and the Class known of this serious safety risk, they would not have purchased the Ranges,

would have paid substantially less for their Ranges than they paid, and/or would have removed them from their homes as a result of the risk of unintentional activation.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.     Discovery Rule

82.     The causes of action alleged accrued upon discovery of the defective nature of the Ranges. Because the Defect is latent, and Samsung concealed it, Plaintiff and members of the Class did not discover and could not have discovered the Defect through reasonable and diligent investigation. Reasonable and diligent investigation did not and could not reveal a factual basis for a cause of action based on Samsung's concealment of the Defects.

### B.     Fraudulent Concealment

83.     Any applicable statutes of limitation have been tolled by Samsung's knowing, active, and ongoing concealment and denial of the facts as alleged herein.

84.     Samsung was and is under a continuous duty to disclose to Plaintiff and the Class the true character, quality and nature of the Ranges, particularly with respect to the serious risks to public safety presented by the Ranges.

85.     At all relevant times, and continuing to this day, Samsung knowingly, affirmatively and actively misrepresented and concealed the true character, quality, and nature of the Ranges and sold the Ranges into the stream of commerce as if they were safe for use.

86.     Given Samsung's failure to disclose this non-public information, over which Samsung had exclusive control, about the defective nature of the Ranges and attendant safety risks—and because Plaintiff and Class Members could not reasonably have known that the Ranges were thereby defective—Plaintiff and Class Members reasonably relied on Samsung's assurances of safety. Had Plaintiff and class members known that the Ranges pose a safety risk to the public, they would not have purchased the Ranges.

87.     Plaintiff and the Class have been kept ignorant by Samsung of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiff and the Class could not reasonably have discovered the true, latently defective nature of the Ranges.

## C.    Estoppel

88.     Samsung was and is under a continuing duty to disclose to Plaintiff and the Class the true character, quality, and nature of the Ranges.  Samsung knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Ranges, and the concealment is ongoing.  Samsung knew of the Defects and the serious safety risk they posed to consumers and has actively concealed them.  Plaintiff reasonably relied on Samsung's assurances of safety. For these reasons, Samsung is estopped from relying on any statute of limitations in defense of this action.

89.     Additionally, Samsung is estopped from raising any defense of laches due to its own conduct as alleged herein.

## CLASS ACTION ALLEGATIONS

90.     Plaintiff brings this action on her own behalf and on behalf of the following Class and Subclass pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4):

### Nationwide Class

All residents of the United States and its territories who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale.

### New York Sub-Class

All residents of New York who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale. This subclass includes any state implied warranty claim that is materially identical to New York's law of implied warranty, any state express warranty claim that is materially similar to New York's law of express warranty, and any state consumer fraud claim that is materially similar to New York's law of consumer fraud.

91.     The Class and the Subclass are referred to collectively as the "Class" for convenience.   Excluded from the Class and Subclass are Samsung, its affiliates, employees, officers, and directors; and the Judge(s) assigned to this case.   Plaintiff reserves the right to modify, change, or expand the Class definitions above in response to discovery and/or further investigation.

28

92.    *Numerosity*.  Upon information and belief, the class is so numerous that joinder of all members is impracticable.   In the first quarter of 2020, Samsung accounted for approximately 21.6% of U.S. home appliance sales.  And Samsung had the second largest market share for cooking appliances, specifically, between 2016 and the third quarter of 2019.  The Class and Subclass therefore must contain, at the very least, thousands of members each.

93.    *Commonality*.  The answers to questions common to the Class will drive the resolution of this litigation. Specifically, resolution of this case will be driven by questions relating to the Ranges' common design, whether the design is defective, whether the defective design poses a safety risk, Samsung's knowledge of the Defect, the uniform diminution in value of the Ranges, and the corresponding unjust enrichment to Samsung. The common questions of law and fact include, but are not limited to, the following:

      a.    Whether the Ranges pose unreasonable safety risks to consumers;

      b.    Whether Samsung knew or should have known, that the products it sold into the stream of commerce pose unreasonable safety risks to consumers;

      c.    Whether Samsung concealed the safety risks its Ranges pose to consumers;

      d.    Whether the safety risks the Ranges pose to consumers constitute material facts that reasonable purchasers would have considered in deciding whether to purchase an electric range;

      e.    Whether the Ranges possess material Defects;

  f.  Whether Samsung knew or should have known of the inherent Defects in the Ranges when it placed them into the stream of commerce;

  g.  Whether Samsung concealed the Defects from consumers;

  h.  Whether the existence of the Defects are material facts reasonable purchasers would have considered in deciding whether to purchase a range;

  i.  Whether the Ranges are merchantable;

  j.  Whether the Ranges are fit for their intended use;

  k.  Whether Samsung was unjustly enriched by the sale of defective Ranges to the Plaintiff class;

  l.  whether any false warranties, misrepresentations, and material omissions by Samsung concerning its defective Ranges caused Class Members' injuries; and

  m.  whether Samsung should be enjoined from further sales of the Ranges.

94. ***Typicality***.  Plaintiff has the same interest as all members of the classes she seeks to represent, and all of Plaintiff's claims arise out of the same set of facts and conduct as all other members of the classes. Plaintiff and all class members own or owned a Range designed or manufactured by Samsung with uniform Defects. All the claims of Plaintiff and Class Members arise out of Samsung's placement of a product into the marketplace it knew was defective and posed safety risks to consumers, and from Samsung's failure to disclose the known safety risks and Defects. Also typical of Plaintiff and Class members' claims are Samsung's conduct in designing,

manufacturing, marketing, advertising, warranting, and selling the defective Ranges, Samsung's conduct in concealing the Defects in the Ranges, and Plaintiff's and Class members' purchase of the defective Ranges.

95.    *Adequacy*. Plaintiff will fairly and adequately represent and protect the interest of the Class Members: Plaintiff's interests align with those of the Class Members, and Plaintiff has no fundamental conflicts with the Class. Plaintiff has retained counsel competent and experienced in products liability, consumer protection, and class action litigation, who will fairly and adequately represent the Class.

96.    *Predominance and Superiority*.  The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the Class, and a class action is superior to other methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable. Samsung has acted in a uniform manner with respect to the Plaintiff and Class Members.

97.    Samsung is a sophisticated party with substantial resources, while Class Members are not, and prosecution of this litigation is likely to be expensive. Because the economic damages suffered by any individual Class Member may be relatively modest compared to the expense and burden of individual litigation, it would be impracticable for Class Members to seek redress individually for Samsung's wrongful conduct as alleged herein.

98.     The concealed safety risks described above support swiftly and efficiently managing this case as a class action, which preserves judicial resources and minimizes the possibility of serial or inconsistent adjudications.

99.     Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Samsung's unlawful and wrongful conduct. Without a class action, Class Members will continue to suffer the undisclosed risks attendant to the Ranges and incur monetary damages, and Samsung's misconduct will continue without remedy. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

100.   There will be no undue difficulty in the management of this litigation as a class action.

101.   Alternatively, certification may be appropriate as to individual issues as those issues will raise common questions applicable to all class members and materially advance the litigation.

102.   ***Ascertainability***.  The Class is defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the Class. The Class consists of purchasers and owners of certain Ranges, and class membership can be determined using receipts, photographs, ownership documentation, and records in Samsung's and other databases.

32

103.   *Injunctive and Declaratory Relief*.  Samsung has acted and refused to act on grounds that apply generally to the Class, so injunctive and/or declaratory relief is appropriate with respect to the entire Class. Samsung made uniform representations and warranties to the Class as a whole, Samsung concealed facts from and made material misrepresentations to the Class as a whole, and Samsung has destroyed and may still be destroying evidence relevant to the allegations of the Class.

## CLAIMS FOR RELIEF

### Count I
### *Violation of the New Jersey Consumer Fraud Act*
### *N.J.S.A. 56:8-1, et seq.*
### (On Behalf of the Nationwide Class)

104.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

105.   Plaintiff brings this claim individually and on behalf of the Nationwide Class.

106.   The New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 et seq.) ("NJCFA") states, in relevant part:

> any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise. . . ." N.J.S.A. 56:8-2.

107.   Plaintiff and Class Members are consumers who purchased Ranges for personal, family, or household use.

108.   The advertisement, promotion, distribution, supply, or sale of the Ranges is a "sale or advertisement" of "merchandise" governed by the NJCFA.

109.   Before Plaintiff's and Class Members' purchase of the Ranges, Samsung violated the NJCFA by making:

    a.   uniform representations that its Ranges were of a particular standard, quality, or grade when they were not and are not, and that they would perform as represented when they did not, as set forth above; and

    b.   false and/or misleading statements about the capacity and characteristics of the Ranges, as set forth above, that were unfair, deceptive, or otherwise fraudulent, had and continue to have the capacity to, and did, deceive the public and cause injury to Plaintiff and Class Members.

110.   Samsung, in its communications with and disclosures to Plaintiff and Class Members, intentionally concealed or otherwise failed to disclose that the Ranges included design Defects that pose a safety risk to consumers and render the Ranges fire risks.

111.   Plaintiff and Class Members reasonably expected that the Ranges would allow for safe cooking, and not present a fire hazard, both before and at the time of purchase, and reasonably expected that Samsung did not design the Ranges to incorporate material Defects known to Samsung, and that the Ranges would perform as represented by Samsung in its promotional materials, service manuals, and owner's manuals. These representations and affirmations of fact made by Samsung, and the facts it concealed or failed to disclose, are material facts that were likely to deceive

reasonable consumers, and that reasonable consumers would, and did, rely on in deciding whether to purchase a Range. Moreover, Samsung intended for consumers, including Plaintiff and Class Members, to rely on its assurances regarding the Ranges' purported safety.

112.   Samsung had exclusive knowledge that the Ranges had and have the Defects, which gave rise to a duty to disclose these facts. Samsung breached that duty by failing to disclose these material facts.

113.   The injury to consumers by this conduct greatly outweighs any alleged countervailing benefits to consumers or competition under all circumstances. There is a strong public interest in consumer appliance safety, as well as in truthfully advertising and disclosing consumer appliance defects that pose a risk to property and life.

114.   Had Plaintiff and Class Members known about the design Defects and accompanying safety risks, and/or that the Ranges did not operate as advertised, they would not have purchased the Ranges or would have paid less than they did for them. As a direct and proximate result of Samsung's actions, Plaintiff and Class Members have suffered ascertainable loss and other damages.

115.   New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiff and the Nationwide Class Members under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.

116.  New Jersey has a significant contact, or significant aggregation of contacts, to the claims asserted by each Plaintiff, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair. Samsung's headquarters and principal place of business are in Ridgefield Park, New Jersey. Samsung also owns property and conducts substantial business in New Jersey, and therefore New Jersey has an interest in regulating Samsung's conduct under New Jersey's laws. Samsung's decision to reside in New Jersey and avail itself of New Jersey's laws render the application of New Jersey law to the claims at hand constitutionally permissible.

117.  The application of New Jersey's laws to the proposed Nationwide Class members is also appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of the Plaintiff and the proposed Nationwide Class members, and New Jersey has a greater interest in applying its laws here than any other interested State.

## Count II
### *Fraud*
**(On Behalf of the Nationwide Class, or Alternatively, the New York Sub-Class)**

118.  Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

119.   Plaintiff brings this claim individually and on behalf of the Nationwide Class or, in the alternative, on behalf of the New York Subclass under New York state law.

120.   Samsung made material omissions concerning a presently existing or past fact in violation of substantially identical common law.  Samsung did not fully and truthfully disclose to its customers the true nature of the Defect.  A reasonable consumer would not have expected the Defect in a new range and especially not a Defect that rendered the range unsafe and unusable for ordinary purposes.

121.   Samsung made these omissions with knowledge of their falsity and with the intent that Plaintiff and Class Members rely upon them.

122.   The facts concealed, suppressed, and not disclosed by Samsung to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Ranges or pay a lesser price.

123.   Samsung had a duty to disclose the true quality and reliability of the Ranges because the knowledge of the Defect and its details were known and/or accessible only to Samsung, Samsung had superior knowledge and access to the relevant facts, and Samsung knew the facts were not known to, or reasonably discoverable by, Plaintiff and Class Members.  Samsung also had a duty to disclose because it made many partial representations about the qualities and reliability of its

ranges, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual unsafe design of their ranges.

124.   Had Plaintiff and the Class known about the defective nature of the Ranges, they would not have purchased the Ranges or would have paid less.

125.   Plaintiff and Class Members reasonably relied to their detriment upon Samsung's material omissions and suffered damages as a result.  Samsung's conduct was willful, wanton, oppressive, reprehensible, and malicious.  Consequently, based upon all the facts as alleged herein, Plaintiff and Class Members are entitled to an award of punitive damages.

## Count III
### *Violations of the New York Deceptive Acts and Practices Act*
### N.Y. Gen. Bus. Law §§ 349, 350
### (On behalf of the New York Subclass)

126.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

127.   Plaintiff Marilyn Delahoy brings this claim under the laws of New York, individually and on behalf of the New York Subclass.

128.   New York Class members are "persons" within the meaning of the New York General Business Law ("GBL"). N.Y. Gen Bus. Law § 349(h).

129.   Samsung is a "person, firm, corporation or association or agent or employee thereof" within the meaning of the GBL. N.Y. Gen Bus. Law § 349(b).

130.   Samsung's conduct as alleged herein occurred in "the conduct of business, trade or commerce" within the meaning of GBL section 350.

131.   Under GBL section 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce" are unlawful.

132.   Section 350 also makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity . . . if such advertising fails to reveal facts of material in the light of . . . representations [made] with respect to the commodity."  N.Y. Gen Bus. Law § 350-a.

133.   Samsung's acts and practices, described herein, are deceptive, misleading, oppressive, unconscionable, and substantially injurious in violation of GBL sections 349 and 350 for the reason stated in paragraphs 183-193, *supra*.

134.   In the course of Samsung's business, it failed to disclose and actively concealed the Defect with the intent that consumers rely on that concealment in deciding whether to purchase a Range.

135.   Samsung's deceptive acts or practices were materially misleading. Samsung's conduct was likely to, and did, mislead reasonable consumers, including Plaintiff Delahoy, about the true performance and value of the Ranges.

136.   Plaintiff Delahoy and the New York Subclass members reasonably relied on Samsung's partial misrepresentations and omissions of material facts when

purchasing Ranges. Plaintiff Delahoy and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Samsung suppressed. Had Ms. Delahoy and New York Subclass members known that the Ranges were defective, they would not have purchased Ranges, would not have purchased them at the prices they did, or would have returned them during the remorse periods.

137. Samsung's actions set forth above occurred in the conduct of trade or commerce.

138. Samsung's misleading conduct concerns widely purchased consumer products and affects the public interest. Samsung's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large.

139. Plaintiff Delahoy and the New York Subclass members suffered ascertainable loss as a direct and proximate result of Samsung's GBL violations. Among other things, Plaintiff Delahoy and the New York Subclass members overpaid for their Ranges, and their Ranges suffered a diminution in value. These injuries are the direct and natural consequence of Samsung's material misrepresentations and omissions.

140. Accordingly, Plaintiff Delahoy, individually and on behalf of the New York Subclass, requests that this Court enter such orders or judgments as may be

necessary to enjoin Samsung from continuing its unfair and deceptive practices.  Under the GBL, Plaintiff Delahoy and the New York Subclass members are entitled to recover their actual damages or $50, whichever is greater.  Additionally, because Samsung acted willfully or knowingly, Plaintiff Delahoy and the New York Subclass members seek three times their actual damages.

**Count IV**
***Breach of Express Warranty***
**(On Behalf of the New York Sub-Class)**

141.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

142.   Plaintiff Delahoy brings this count on behalf of herself on behalf of the New York Sub-Class.

143.   Samsung is and was at all relevant times a merchant and seller of appliances including the Ranges within the meaning of N.Y. U.C.C. Law §103(d).

144.   Plaintiff is and was at all relevant times a buyer under N.Y. U.C.C. Law §103(d).

145.   The Ranges are and were at all relevant times goods within the meaning of N.Y. U.C.C. Law § 102.

146.   Defendant provided all purchasers of the Ranges with an express warranty described herein, which became a material part of the bargain.  Accordingly,

Defendants' express warranty is an express warranty under New York law.  N.Y. U.C.C. Law § 2-313.

147.   Defendants' Warranty provides in relevant part that the Ranges are "warranted by SAMSUNG against manufacturing defects in materials or workmanship for the limited warranty period, starting from the date of original purchase, of: One (1) Year Parts and Labor."

148.   The Warranty formed the basis of the bargain that was reached when Plaintiff and other members of the Class purchased their Ranges.

149.   Defendants breached the express warranty through the acts and omissions described above.

150.   Plaintiff and members of the Class have had sufficient direct dealing with either Samsung or its agents (*i.e.*, retailers and technical support) to establish privity of contract between Samsung, on one hand, and Plaintiff and each of the other Class Members on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are the intended third-party beneficiaries of contracts between Samsung and its distributors and retailers and, specifically, of Samsung's express warranties.

151.   The distributors and retailers were not intended to be the ultimate consumers of the Ranges and have no rights under the warranty agreements provided

with the Ranges; the warranty agreements were designed for and intended to benefit the consumer only. *See* N.Y. U.C.C. Law § 2-318.

152. Any attempt by Samsung to disclaim or limit recovery to the terms of the express warranty is unconscionable and unenforceable here. Specifically, the warranty limitation is unenforceable because Samsung knowingly sold defective products without informing consumers about the Defect. The time limits are unconscionable and inadequate to protect Plaintiff and the members of the Class. Among other things, Plaintiff and members of the Class did not determine these time limitations and/or did not know of other limitations not appearing in the text of the warranties, the terms of which were drafted by Defendants and unreasonably favored Defendants. A gross disparity in bargaining power and knowledge of the extent, severity, and safety risk of the Defect existed between Samsung and members of the Class.

153. Further, the limited warranty promising to repair and/or correct a manufacturing or workmanship defect fails of its essential purpose because the contractual remedy is insufficient to make Plaintiff and the members of the Class whole, and because on information and belief, Samsung has failed and/or has refused to adequately provide the promised remedies, *i.e.* a permanent repair, within a reasonable time.

154.   Plaintiff notified Samsung of the breach. Samsung was also on notice of the Defect from the complaints and service requests it received from Class Members, including complaints submitted online to Samsung, and through other internal sources.

155.   As a result of Samsung's breach of the applicable express warranties, owners of the Ranges suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Ranges.

156.   Additionally, as a result of the Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Ranges are substantially certain to inadvertently activate and pose a severe risk of fire and burns to Plaintiff and the Class.

157.   As a direct and proximate result of Defendant's breaches of express warranty, Plaintiff and the Class have been damaged in an amount to be proven at trial.

**Count V**
***Breach of the Implied Warranty of Merchantability***
**(On behalf of the New York Subclass)**

158.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

159.   Plaintiff Marilyn Delahoy brings this claim on behalf of the New York Subclass, under the N.Y. UCC Law § 2-314.

160.   Samsung is and was at all relevant times a merchant and seller of appliances including the Ranges within the meaning of N.Y. U.C.C. Law §103(d).

161.   Plaintiff is and was at all relevant times a buyer under N.Y. U.C.C. Law §103(d).

162.   The Ranges are and were at all relevant times goods within the meaning of N.Y. U.C.C. Law § 102.

163.   A warranty that the Ranges were of merchantable quality and condition arises by operation of law with respect to transactions for the purchase of Ranges. N.Y. U.C.C. Law § 314.  Samsung impliedly warranted that the Ranges were of good and merchantable condition and quality, fit for their ordinary intended use, including with respect to safety, reliability, operability, and the absence of material defects, and that the ranges would pass without objection in the appliance trade.

164.   The Ranges, when sold and at all times thereafter, were not in merchantable condition or fit for the ordinary purpose for which ranges are used. Specifically, the Ranges were not merchantable in that the Defect renders the ranges unfit for ordinary cooking activities.

165.   Samsung was provided notice of the issues complained of herein within a reasonable time by numerous complaints online, consumer complaints, and repair requests made directly to Samsung.

166.   Plaintiff and the other Class members have had sufficient direct dealings with either Samsung or its agents, including its authorized resellers, to establish privity of contract between Samsung on the one hand and Plaintiff and each Class member on

the other hand.  Regardless, privity is not required here because Plaintiff and each of the Class Members are the intended third-party beneficiaries of contracts between Samsung and its resellers, and specifically of Samsung's implied warranties.  The resellers were not intended to the ultimate consumers of the Ranges and have no rights under the warranty agreements provided with the Ranges.  The warranty agreements were designed for and intended to benefit consumer end-users only.

167.   In its capacity as a supplier and/or warrantor, and in light of the conduct described herein, any attempt by Samsung to limit its implied warranty in a manner that would exclude or limit coverage for the Defect would be unconscionable.  Samsung's warranties were adhesive and did not permit negotiation.  Samsung possessed superior and exclusive knowledge of the Defect, which is a latent defect, prior to offering Ranges for sale.  Samsung concealed and did not disclose the Defect, and Samsung did not remedy the Defect prior to sale or afterward.  The Ranges are defective and substantially certain to present a risk of inadvertent activation throughout their useful life.

168.   As a direct and proximate result of the breach of these warranties, Plaintiff and the Class Members were injured and are entitled to damages.

## Count VI
### *Unjust Enrichment*
### (On Behalf of the New York Sub-Class)

169.   Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

170.   Plaintiff Marilyn Delahoy brings this claim on behalf of the New York Subclass under New York state law.

171.   Samsung received proceeds from its intentional sale of defective Ranges with defective control knobs, which were purchased by Plaintiff and Class Members for an amount far greater than the reasonable value of the defective Ranges.

172.   In exchange for the purchase price paid by Plaintiff and Class Members, Samsung provided defective Ranges that are likely to pose a material risk of fire within their useful lives. This Defect renders the Ranges unfit, and indeed, unsafe for their intended use.

173.   Plaintiff and Class Members reasonably believed that the Ranges would function as advertised and warranted, and did not know, nor could have known, that the Ranges contained Defects at the time of purchase.

174.   Samsung received and is aware of the benefit conferred by Plaintiff and Class Members and has retained that benefit despite its knowledge that the benefit is unjust.

175.    Under the circumstances, permitting Samsung to retain the proceeds and profits from the sales of the defective Ranges would be unjust. Therefore, Samsung should be required to disgorge the unjust enrichment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Marilyn Delahoy, individually and on behalf of the above defined Class, by and through counsel, pray the Court grant the following relief:

A.    An Order certifying this action as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    An Order appointing Plaintiff Marilyn Delahoy as representative for the Class and appointing her counsel as lead counsel for the Class;

C.    An order awarding Plaintiff Marilyn Delahoy and all other Class Members damages in an amount to be determined at trial for the wrongful acts of Samsung;

D.    A Declaration that the Ranges are defective and pose a serious safety risk to consumers and the public;

E.    An Order enjoining Samsung, its agents, successors, employees, and other representatives from engaging in or continuing to engage in the manufacture, marketing, and sale of the defective Ranges; requiring Samsung to issue corrective actions including notification, recall, service bulletins, and fully-covered replacement parts and labor, or replacement of the Ranges; and requiring Samsung to preserve all evidence relevant to this lawsuit and notify Range owners with whom it comes in contact of the pendency of this and related litigation;

F.    Nominal damages as authorized by law;

G.    Restitution as authorized by law;

H.    Punitive damages as authorized by law;

I.      Payment to the Class of all damages associated with the replacement of the defective products and parts, in an amount to be proven at trial;

J.      An order awarding attorney's fees pursuant to applicable Federal and State law;

K.      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

L.      Any and all other and further relief as this Court deems just, equitable, or proper.

## **JURY DEMAND**

Plaintiff demand a trial by jury on all counts so triable.

Respectfully submitted,

Dated: June 17, 2022

*/s/ Zachary Arbitman*
Alan M. Feldman*
Edward S. Goldis
Zachary Arbitman
FELDMAN SHEPHERD WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
T: (215) 567-8300
F: (215) 567-8333
afeldman@feldmanshepherd.com
egoldis@feldmanshepherd.com
zarbitman@feldmanshepherd.com

Michael F. Ram*
Marie N. Appel*
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
mram@forthepeople.com
mappel@forthepeople.com

*Attorneys for Plaintiff and the Class*

49

*application  to  appear  pro  hac  vice
forthcoming*